UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

HARPOLE CONSTRUCTION, INC.,            Case No. 15-12630 t11

    Debtor.

HARPOLE CONSTRUCTION, INC.

    Plaintiff,

v.                                                    Adv. No. 16-1058 t

MEDALLION MIDSTREAM, LLC,

    Defendant.

## **OPINION**

Before the Court is defendant's motion to dismiss the adversary proceeding, abstain, or transfer venue to Dallas, Texas. The motion is based on the fact that the asserted claims arise from a post-petition contract between the parties that was part of the Debtor's normal business operations, coupled with defendant's allegation that it lacks minimum contacts with New Mexico. The Court finds defendant has sufficient contacts with New Mexico for venue to be proper in this Court, declines to transfer venue for other reasons, and declines to abstain. Defendant's motion therefore will be denied.

I.     Findings of Fact

The Court finds the following facts for the limited purpose of ruling on the motion:[1]

Plaintiff Harpole Construction, Inc. filed this chapter 11 case on October 2, 2015. Harpole is a New Mexico corporation that installs and services oil pipelines in New Mexico and Texas. It conducts business from construction yards in Farmington, New Mexico; Hobbs, New Mexico, and Midland, Texas.

Hobbs and Midland are in the Permian Basin, an area well known for its large oil and natural gas deposits. Hobbs is on the border of New Mexico and Texas.

Defendant Medallion Midstream, LLC is a Delaware limited liability company. Medallion owns and operates oil pipelines in Texas. Medallion's principal place of business is in Irving, Texas.

In early April 2016, a representative of Medallion contacted Harpole in New Mexico, by telephone, to invite Harpole to bid on four construction jobs, denoted the "Bruckner Baptist," "Halfmann," "Char Hughes," and "Pettit" jobs.

Shortly thereafter, Medallion delivered to Harpole in New Mexico a "request for proposal" package, which included a copy of Medallion's form "master service contract" that Medallion uses on all of its contracts (the "MSA").

The form of MSA Medallion sent to Harpole had an Exhibit C, titled "Supplement to Indemnity Provisions," which provided in part:

---

[1] The Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

> 2. <u>New Mexico</u>. In the event, and only in the event, that the Agreement is determined by a court of competent jurisdiction to be a "construction contract" as defined in N.M. Stat. Ann. § 56-7-1.E, each applicable indemnitor's obligation to indemnify, hold harmless, or defend the other Party to the Agreement, including the other Party's employees or agent, under Section 13 of this Agreement shall not extend to the proportionate amount of any Claims arising out of bodily injury to persons or damage to property caused by or resulting from, in whole or in part, the negligence, act, or omission of the indemnitee, its officers employees or agents.

The form of MSA Medallion sent to Harpole also had an Exhibit D, titled "Supplement to Insurance Provisions," which provided in part:

> 2. <u>New Mexico</u>. In the event, and only in the event, that the Agreement is determined by a court of competent jurisdiction to be a "construction contract" as defined in N.M. Stat. Ann. § 56-7-1.E, Company's and Contractor's respective insurance obligations under Section 3 of this Agreement shall not apply to the extent Company or Contractor, as applicable, would be required to insure the other Party to the Agreement, including the other Party's employees or agents against Claims arising out of bodily injury to persons or damage to property caused by or resulting from, in whole or in part, the negligence, act or omission of the indemnitee, its officers, employees or agents.

On April 12, 2016, Harpole submitted to Medallion bids on the four projects. Medallion received the bids in its Texas offices a day or so later.

On or about April 19, 2016, a Medallion representative called Harpole in New Mexico and informed it that it was the successful bidder on all four jobs.

On or about the April 21, 2016 Harpole received in New Mexico from Medallion four documents entitled "Request for Work Order," one for each job. The documents were each signed by a Medallion representative.

On April 22, 2016, Harpole signed and mailed to Medallion in Texas the MSA and related documents.

On April 26, 2016, Medallion signed and mailed to Harpole in New Mexico four documents entitled "Work Orders," one for each job. Harpole signed each work order in New Mexico a day later and mailed the documents back to Medallion in Texas.

-3-

The MSA requires that the parties sign work orders before starting any job. It also contains a clause identifying Dallas County, Texas as the forum for any disputes.

Harpole started work on the four projects in late April 2016.

On May 3, 2016, Medallion again contacted Harpole in New Mexico, by telephone or email, and asked Harpole to bid on a fifth job, known as the "Permian Resources" job. Medallion mailed a bid package to Harpole in New Mexico.

Harpole submitted a bid for the Permian Resources job in late May, 2016.

Medallion accepted Harpole's bid, and signed a work order for the job on May 27, 2016. Medallion mailed the work order to Harpole in New Mexico. Harpole signed the work order and mailed it back to Medallion in Texas.

Harpole maintained an open account with Medallion and sent weekly invoices to Medallion, including expenses for equipment rental and third party services such as water delivery. Between April and July, Medallion timely paid each week.

Medallion asserts that on July 27, 2016, it learned that the Reagan County Sheriff's Office was investigating a claim that Harpole was using a stolen trencher on the Permian Resources job. Medallion also alleges the owner of the trencher may file a criminal or civil complaint against Harpole. Harpole denies that it stole the trencher.

On August 29, 2016, Medallion sent Harpole a letter terminating the MSA, terminating all outstanding work orders, and disputing certain charges by Harpole. As grounds for the termination, Medallion asserted that Harpole did not comply with applicable laws and that work was not performed in a workmanlike manner. Medallion disputed charges associated with four invoices totaling about $661,700 and any future charges on any of the five projects.

Harpole responded on September 2, 2016, denying that it performed any substandard or faulty work. Harpole also requested payment of $678,863, which includes the four disputed invoices and a $17,164 invoice not mentioned in the August 29 letter.

Medallion sent a reply on September 8, 2016, asserting that it was entitled to offset the claimed charges by the amount of any potential costs and exposure associated with Harpole's conduct. According to Medallion, it had to hire third parties to complete work it deemed unsatisfactory. The letter stated that the amount of Medallion's offsets exceeded Harpole's claimed charges by $387,649. The letter did not include a demand for payment.

On September 13, 2016, Harpole's bankruptcy counsel sent Medallion a letter asserting that Medallion violated the automatic stay by offsetting any amounts from the invoiced charges. This may have been the first time Medallion learned that Harpole was in bankruptcy.

On October 11, 2016, Harpole filed this adversary proceeding against Medallion for breach of contract, conversion, and injunctive relief. Harpole asserts Medallion breached the MSA by, inter alia, failing to provide proper notice of Harpole's alleged breach; refusing to pay Harpole for work performed prior to the trencher incident; failing to allow Harpole to re-perform the work before hiring a third party; and overcharging Harpole. Harpole also asserts Medallion converted 4,200 wooden skids that Harpole left on Medallion's property.

On October 20, 2016, Medallion filed a complaint against Harpole in the United States District Court for the Northern District of Texas, Dallas Division (the "Texas Action"), alleging breach of contract and fraud. Medallion seeks around $1 million in money damages stemming from allegedly inferior work Harpole performed at several job sites in Texas. On the same day, Medallion filed its motion in this Court, seeking dismissal, abstention, or a venue transfer to Dallas.

The presiding judge in the Texas Action, Hon. Sam Lindsay, entered an order on November 2, 2016 administratively closing the action. The closing order was prompted by Judge Lindsay's finding that the automatic stay prevented Medallion from prosecuting the matter. To date, Medallion has taken no action to modify the automatic stay or obtain an order that the stay does not apply.

By an order entered October 21, 2016, the Court denied Harpole's request for injunctive relief and set a briefing schedule for the motion to dismiss. The parties consented to the Court ruling on the papers and affidavits submitted in connection with the motion.

A prompt resolution of the parties' dispute is important to Harpole's ability to reorganize. In accordance with the needs of the case, the Court agreed to rule on the motion to dismiss promptly. The Court also set discovery deadlines and a January 17, 2017 trial date in the event it denied the motion.

## II. Discussion

### A. Venue.

First, Medallion challenges venue under Rule 12(b)(3). In ruling on venue, the Court accepts all well-pleaded allegations in the complaint, unless contradicted by the defendant's affidavits. *Hancock v. American Tel and Tel Co., Inc.,* 701 F.3d 1248, 1260 (10th Cir. 2012). If any facts conflict, the Court draws all reasonable inferences in favor of Harpole. *Id.*

Medallion argues venue is improper in this Court pursuant to 28 U.S.C. § 1409(d), and asks the Court to transfer the case to federal district court in Dallas. Ordinarily, the debtor in possession enjoys a "home court advantage," and can bring all claims affecting the estate in the bankruptcy court. *See, e.g.,* 1 Collier on Bankruptcy, ¶ 4.03[4], n. 45 and accompanying text (16th ed.). Section 1409(d) creates an exception:

> [A] trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor only in the district court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought.

Harpole concedes that § 1409(d) applies, but argues that New Mexico is still the appropriate forum for this dispute.

B.  Minimum Contacts.

The applicable non-bankruptcy law governing venue is 28 U.S.C. § 1391. Section (b)(1) provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located." Entities such as Medallion are presumed to reside in any district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c)(2).

At issue is whether the Court has specific personal jurisdiction over Medallion based on its minimum contacts with New Mexico.[2] The New Mexico long-arm statute provides:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>     (1)  the transaction of any business within this state;

N.M.S.A. § 38-1-16(A)(1). The New Mexico long-arm statute applies to federal courts' analysis of personal jurisdiction. *Walker v. THI of New Mexico at Hobbs Center,* 801 F. Supp. 2d 1128, 1141 (D.N.M. 2011). The statute is coextensive with constitutional due process limitations, so if jurisdiction is consistent with due process, then New Mexico's long-arm statute authorizes

---

[2] Harpole does not argue the Court has general (rather than specific) jurisdiction over Medallion, and the Court agrees that theory does not apply.

-7-

jurisdiction over a nonresident defendant. *See Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54 (N.M. 2002).

To comply with due process, the defendant must have sufficient "minimum contacts" with the forum, such that having to defend the lawsuit there does not offend traditional notions of fair play and justice. *Anzures v. Flagship Restaurant Group,* 819 F.3d 1277, 1279 (10th Cir. 2016). The plaintiff must show that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This "assures a reasonable expectation in the out-of-state defendant that he might be brought into court in the state where he sought to do business, and invokes the benefits and protections of the forum state's laws." *Id.* at 1058-1059.

To analyze minimum contacts in contract cases, courts in the Tenth Circuit "look at prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 1059. Courts are more willing to exercise jurisdiction over non-residents who reach out to do business with local residents, as the "solicitation itself is some evidence suggesting purposeful availment." *Pro Axess, Inc. v. Orlux Distribution AST Sports Sci.*, 428 F.3d 1270, 1277 (10th Cir. 2005). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities"); *AST Sports Science*, 514 F.3d at 1059-1060 (British company had minimum contacts with Colorado where it solicited plaintiff to become a distributor); *Brown v. Washoe Hous. Auth.*, 625 F. Supp. 595, 601 (D. Utah 1985), rev'd on other grounds, 835 F.2d 1327 (10th Cir. 1988) ("By accepting the bid of a Utah contractor and maintaining mail and

telephone correspondence with that contractor, [defendant] performed purposeful acts here and it was foreseeable to [defendant] that it could be haled into court in this forum in an action arising out of its interstate relationship with the plaintiff").

Here, Medallion initiated contact with Harpole, inviting Harpole to bid on various projects. The parties did not agree to work on one project together and part ways. The MSA underpinned a business relationship that spanned over five jobs, with various work orders and lesser agreements governing each job. Medallion also solicited Harpole to bid on the Permian Resources job. The MSA specifically invokes the benefits and protections of New Mexico's laws, as it contains two provisions that apply if the MSA is deemed to be a construction contract under New Mexico law.

The interactions between Medallion and New Mexico are not the type of "random," "fortuitous," or "attenuated" contacts that are insufficient to give a court jurisdiction over a defendant. *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774 (1984). Nor is the fact that Medallion never visited New Mexico determinative. As the Tenth Circuit pointed out, modern communications such as phone calls and emails "can eliminate the need for a physical presence." *AST Sports Science,* 514 F.3d at 1059. The Court is satisfied that Medallion purposefully availed itself of the privilege of conducting activities in New Mexico, and that the alleged injury arose from these activities.

Further, Hobbs is on the Texas border and is only about 95 miles from Midland. There is a federal courthouse in Roswell, New Mexico (less than 100 miles from the Texas border), where the proceeding could be tried if Medallion so desired. Given these and other facts, exercising jurisdiction over the dispute does not offend traditional notions of fair play and justice. Declining to exercise jurisdiction on "fair play and justice" grounds is rare, and the defendant "must present

a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Newsome v. Gallacher,* 722 F.3d 1257, 1271 (10th Cir. 2013).

Venue is proper in this Court.

C.  Forum Selection Clause.

Medallion also asks the Court to transfer venue to Dallas based on the forum selection clause in the MSA. The clause states that in the event litigation arises in connection with the MSA or any work, the parties agree any action must be brought in Dallas County, Texas.

Outside of bankruptcy, a valid forum-selection clause should ordinarily be enforced. *Atlantic Marine Construction Company v. U.S. District court for the Western Dist. Of Texas,* 134 S. Ct. 568 (2013). However, courts have routinely held that when an adversary proceeding is "core"[3] and not inextricably linked with a non-core proceeding, the public interest in centralizing bankruptcy proceedings outweighs the interests in enforcing a forum selection clause. *See In re Spillman Dev. Group, Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013) (affirming bankruptcy court's refusal to enforce forum-selection clauses in guaranty agreements on the ground that public policy called for core proceeding to remain in bankruptcy court); *In re Icenhower*, 757 F.3d 1044, 1051 (9th Cir. 2014) (bankruptcy court properly declined to enforce forum selection clause where the proceeding was core and was not inextricably linked with a non-core proceeding); *In re Residential Capital, LLC,* 515 B.R. 52 (Bankr. S.D.N.Y. 2014) (forum selection clauses are "generally enforced in non-core cases but not in core cases").

Other courts have balanced the public interest in centralizing a particular core proceeding in a bankruptcy court against the parties' legitimate expectations and the interest of justice in

---

[3] A term defined in 28 U.S.C. § 157(b)(2).

-10-

enforcing a forum-selection clause.  *See, e.g., In re D.E. Frey Grp., Inc.*, 387 B.R. 799, 805 (D. Colo. 2008); *In re Manchester, Inc.*, 417 B.R. 377, 384–88 (Bankr. N.D. Tex. 2009).

The claims at issue here are all "core."  Unlike prepetition contract claims, which are "non-core," claims on post-petition contracts fall within the "administrative matters" element of core proceedings as defined in 28 U.S.C. § 157(b)(2)(A).  *See In re Texas Reds, Inc.*, 2010 WL 1711112 at *3, n. 15 (Bankr. D.N.M. 2010) (collecting cases); *In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir.1987) (often cited for the proposition that post-petition contract disputes are core).  Claims against the estate are also listed as core proceedings under 28 U.S.C. § 157(b)(2)(B).  *See In re Best Payphones, Inc.,* 523 B.R. 54, 68 (Bankr. S.D.N.Y. 2015) (allowance or disallowance of claims is core); *Tyman v. Wedlo, Inc.,* 204 B.R. 1006, 1019 n. 23 (Bankr. N.D. Ala. 1996) ("Suits against debtor-defendants are generally considered core proceedings").

In accordance with the case law cited above, and after considering the circumstances of this case, the Court concludes that the interest in centralizing all of Harpole's disputes outweighs the policy of enforcing the forum selection clause.  The forum selection clause was part of Medallion's stock contract.  Harpole had to sign it to get work, which it needed to stay afloat.  Harpole has been involved in other litigation in this Court (several adversary proceedings are still pending).  A prompt resolution of the proceedings, and this proceeding in particular, is integral to Harpole's reorganization prospects.  For these reasons, the Court declines to enforce the forum selection clause.

D.  Abstention.

Finally, Medallion asks the Court to abstain from hearing this suit under the permissive abstention provisions of 28 U.S.C. § 1334(c)(1):

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State court or respect for State law, from abstaining from

hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The factors courts analyze in determining whether to abstain under § 1334(c)(1) include:

    1) the effect that abstention would have on the efficient administration of the bankruptcy estate;
    2) the extent to which state law issues predominate;
    3) the difficulty or unsettled nature of applicable state law;
    4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;
    5) the federal jurisdictional basis of the proceeding;
    6) the degree of relatedness of the proceeding to the main bankruptcy case;
    7) the substance of the asserted "core" proceeding;
    8) the feasibility of severing the state law claims;
    9) the burden the proceeding places on the bankruptcy court's docket;
    10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of parties;
    11) the existence of a right to jury trial; and
    12) the presence of nondebtor parties in the proceeding.

*In re Winkle,* 2016 WL 196981, *5 (Bankr. D.N.M.) (citing *In re Commercial Financial Services, Inc.,* 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000), *reconsideration granted in part,* 225 B.R. 68 (Bankr. N.D. Okla. 2000), and *In re Republic Reader's Service, Inc.,* 81 B.R. 422, 428-429 (Bankr. S.D. Tex. 1987)).

As an initial matter, the Court questions whether § 1334(c)(1) applies where, as here, the alternative venue is another federal court. The language of § 1334(c)(1) and the case law discussing it focus on comity with state courts. *See In re Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996) (Congress intended to address concerns of comity with the permissive abstention statute); *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (same); *In re Middlesex Power Equipment & Marine, Inc.*, 292 F.3d 61, 69 (1st Cir. 2002) (permissive abstention decision driven by interests of comity, and respect for state law); *In re DPH Holdings Corp.*, 2013 WL 3948683, *12 (S.D.N.Y. 2013) (emphasizing state law concerns). *See also Thompson v. Magnolia Petroleum*, 309 U.S. 478 (1940) (Justice Black discusses permissive abstention under the Bankruptcy Act, noting that

-12-

abstention may be indicated when the bankruptcy court must address difficult issues of state law, better left to state courts).

In any event, the Court is not persuaded to abstain after considering the relevant factors. Abstention could have a huge impact on the estate. Without a prompt adjudication, Harpole alleges it might go out of business, resulting in little or no dividend to its unsecured creditors. This Court is prepared to try the matter in approximately 60 days, and hold a confirmation hearing shortly thereafter. The matter is a core proceeding, and this Court is experienced with commercial litigation and contract disputes. Furthermore, federal district courts are very busy throughout the country, so it is incumbent on bankruptcy courts to do what they can to ease the burden on the district courts.[4]

Medallion primarily urges the Court to abstain because it made a jury demand and because it asserts this Court cannot make a final decision in the adversary proceeding. The existence of a jury demand does not automatically divest the bankruptcy court of jurisdiction. *See In re Commercial Fin. Servs., Inc.*, 239 B.R. 586, 596 (Bankr. N.D. Okla. 1999) (collecting cases). Ordinarily, the bankruptcy court continues to preside unless and until the case goes to a jury. *Id.* Further, if Medallion later seeks an administrative expense claim in this Court, that may qualify as a waiver of its right to a jury trial. *See, e.g., In re Endeavor Highrise, L.P.,* 425 B.R. 402 (Bankr. S.D. Tex. 2010) (comprehensively surveying the case law on whether making a claim against the estate extinguishes the claimants' right to a jury). The jury demand is therefore not a sufficient reason to abstain.

---

[4] Permissive abstention should be the exception, not the rule. *See* 1 Collier on Bankruptcy ¶ 3.05[1], n. 11 and accompanying text (16th ed.) (collecting cases).

With respect to the possible *Stern*[5] issues, even if Court later determined it could not issue a final decision on some of the claims, the role of the bankruptcy court in such instances would be to conduct pretrial proceedings, and if appropriate, submit a report and recommendation to the district court. *In re Hart Oil & Gas, Inc.,* 534 B.R. 35, 43 (Bankr. D.N.M. 2015). *See also In re Lehman Bros. Holdings Inc.*, 480 B.R. 179, 193 (S.D.N.Y. 2012) (most courts addressing the issue have held that bankruptcy courts have the authority to issue reports and recommendations on Stern claims)*; Parks v. Persels & Associates, LLC*, 509 B.R. 345, 348 (D. Kan. 2014) ("In the wake of *Stern* ... the bankruptcy court's opinion was presented to this court as a Report and Recommendation"); *Kelley v. JPMorgan Chase & Co*., 464 B.R. 854, 863 (D. Minn. 2011) (bankruptcy court has unquestioned authority to conduct pretrial proceedings and submit proposed findings of fact and conclusions of law to the district court).

The Court finds that other factors listed above are not particularly relevant.[6] In view of the foregoing, the Court concludes that permissive abstention is not indicated.

### III. Conclusion

Venue is proper in this Court because of Medallion's minimum contacts with New Mexico relating to the business dealings between the parties. The forum selection clause, which might otherwise be enforceable, must give way to the obligation of this Court to administer the bankruptcy estate. Discretionary abstention is not warranted. The Court therefore will deny the motion, by entry of a separate order.

---

[5] *Stern v. Marshall*, 131 S. Ct. 2594 (2011).
[6] To the extent they are, the Court finds that factors 6, 7, 8, and 9 weigh against abstention, factors 2, 3, and 4 are not relevant, and factors 10 and 12 weigh in favor of abstention.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: November 23, 2016

Copies to:
William Davis
Nephi Hardman
6709 Academy NE, Ste. A
Albuquerque, NM  87109

Richard Staff
Jeff Weems
6363 Woodway, Suite 1100
Houston, TX 77057

William Steven Bryant
600 Congress Avenue, Ste. 2200
Austin, TX 78701