UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

HARPOLE CONSTRUCTION, INC.,                                    Case No. 15-12630 t11

    Debtor.

HARPOLE CONSTRUCTION, INC.,

    Plaintiff,

v.                                                                                         Adv. No. 16-1058 t

MEDALLION MIDSTREAM, LLC,

    Defendant.

## **OPINION**

    Before the Court is plaintiff's objection to defendant's demand for a jury trial on all claims. The Court concludes that defendant lost its right to a jury trial when it filed a counterclaim in this proceeding.

### I.    Findings of Fact

    The Court finds the following facts for the limited purpose of ruling on the motion:[1]

    Plaintiff Harpole Construction, Inc. filed this chapter 11 case on October 2, 2015. Harpole is a New Mexico corporation that installs and services oil pipelines in New Mexico and Texas. It conducts business from construction yards in Farmington, New Mexico; Hobbs, New Mexico; and Midland, Texas.

---

[1] The Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

Hobbs and Midland are in the Permian Basin, an area well known for its large oil and natural gas deposits. Hobbs is on the border of New Mexico and Texas.

Defendant Medallion Midstream, LLC is a Delaware limited liability company. Medallion owns and operates oil pipelines in Texas. Medallion's principal place of business is in Irving, Texas.

In early April 2016, a representative of Medallion invited Harpole to bid on four construction jobs. Shortly thereafter, Medallion delivered to Harpole a bid package that included a copy of Medallion's form Master Service Contract (the "MSA").

On April 12, 2016, Harpole submitted to Medallion bids on the four projects. Harpole did not disclose that is was a debtor in possession. A Medallion representative called Harpole on April 19, 2016 and informed it that it was the successful bidder on all four jobs.

On or about the April 21, 2016 Harpole received from Medallion a "Request for Work Order" for each job. The documents were each signed by a Medallion representative. The next day Harpole signed and mailed the requests, together with a signed MSA, to Medallion.

On April 26, 2016, Medallion signed and mailed to Harpole a "Work Order" for each job. Harpole started work on the four projects in late April 2016.

On May 3, 2016, Medallion again contacted Harpole and asked it to bid on a fifth job, known as the "Permian Resources" job. Medallion mailed a bid package to Harpole. Harpole submitted a bid for the Permian Resources job in late May, 2016. Medallion accepted Harpole's bid, and signed a work order for the job on May 27, 2016.

Harpole maintained an open account with Medallion and sent weekly invoices. Between April and July, Medallion timely paid each invoice.

-2-

Case 16-01058-t    Doc 66    Filed 01/10/17    Entered 01/10/17 15:49:50 Page 2 of 14

Medallion asserts that on July 27, 2016, it learned that the Reagan County Sheriff's Office was investigating a claim that Harpole was using a stolen trencher on the Permian Resources job. Medallion also alleges the owner of the trencher may file a criminal or civil complaint against Harpole. Harpole denies that it stole the trencher.

On August 29, 2016, Medallion sent Harpole a letter terminating the MSA, terminating all outstanding work orders, and disputing certain charges by Harpole. As grounds for the termination, Medallion asserted that Harpole did not comply with applicable laws and that work was not performed in a workmanlike manner. Medallion disputed charges associated with four invoices totaling about $661,700 and any future charges on any of the five projects.

On October 11, 2016, Harpole filed this adversary proceeding against Medallion for breach of contract, conversion, and injunctive relief. Harpole asserts Medallion breached the MSA by, inter alia, failing to provide proper notice of Harpole's alleged breach; refusing to pay Harpole for work performed prior to the trencher incident; failing to allow Harpole to re-perform the work before hiring a third party; and overcharging Harpole. Harpole also asserts Medallion converted 4,200 wooden skids that Harpole left on Medallion's property.

On October 20, 2016, Medallion filed a complaint against Harpole in the United States District Court for the Northern District of Texas, Dallas Division (the "Texas Action"), alleging breach of contract and fraud. Medallion sought about $1 million in money damages stemming from allegedly inferior work Harpole performed at several job sites in Texas. On the same day, Medallion filed a motion in this Court, seeking dismissal, abstention, or a venue transfer to Dallas.

The judge in the Texas Action entered an order on November 2, 2016 closing the action because the automatic stay in this case prevented Medallion from prosecuting the action.

By an order entered October 21, 2016, the Court denied Harpole's request for injunctive relief and set a briefing schedule for the motion to dismiss.

The Court denied Medallion's motion to dismiss or abstain on November 23, 2016. Medallion filed an answer and counterclaim in the adversary proceeding on December 5, 2016, asserting claims for breach of contract and fraud. The damages claimed total about $1,200,000. At the end of the counterclaim Medallion requested a trial by jury.

The issues raised in Medallion's counterclaim cannot be separated from those raised in Harpole's complaint; the facts in dispute are inextricably intertwined.

Harpole filed an answer to the counterclaim on December 14, 2016. The answer did not include an objection to the jury demand.

On December 19, 2016, Medallion consented to this Court presiding over a jury trial of its counterclaim.

Harpole objected to Medallion's jury demand on December 21, 2016. Two days later Harpole filed an amended answer to Medallion's counterclaim, which included a short objection to the jury demand.

Briefs on the jury trial issue were filed on January 4, 2017, and the parties argued their positions on January 6, 2017.

II. Discussion

A. Right to a Jury Trial.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const., Amdt. 7. The term "suits at common law" included "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were

-4-

recognized, and equitable remedies were administered." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998) (internal quotation omitted). "The Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of private right.'" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 n. 4 (1989).

To determine whether a party has a right to a jury trial, "[f]irst, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989) (internal quotation and citation omitted). "The second stage of this analysis is more important than the first." *Id.*

"A cause of action for breach of contract was brought before the courts of law before the merger of law and equity, and therefore unquestionably sounds in law." *In re Capital Assocs. Int'l, Inc.*, 2003 WL 26057510, at *8 (Bankr. N.D. Tex. Aug. 6, 2003). *See generally Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Comm'n,* 430 U.S. 442, 459 (1977) ("[S]uits for damages for breach of contract . . . were suits at common law with the issues of the making of the contract and its breach to be decided by a jury . . . .").

Whether a fraud claim is legal in nature depends on the remedy sought. *See* 9 Wright and Miller, Federal Practice and Procedure, § 2311 (3d ed. 2008). "When the only remedy sought for fraud is damages, the action is considered to be legal in nature and there is a right to a jury trial." *Id.* Here, the parties seek only money damages for their fraud and breach of contract claims, remedies that clearly are legal rather than equitable.

Finally, the Court must determine whether the claim at issue involves private rights or public rights. *Granfinanciera,* 492 U.S. at 51. "Public rights" are not well defined by the case law, but it is clear that "wholly private tort, contract, and property cases . . . are not at all

implicated." *Id.* The Court concludes that, absent Harpole's pending chapter 11 case, Medallion would have had a right to a jury trial on the claims and counterclaims relating to its dispute with Harpole.

        B.      <u>Loss of the Jury Trial Right by Filing a Claim</u>.

A party may lose or "waive"[2] its right to a jury trial by filing a claim against the bankruptcy estate. In *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990), the Supreme Court held:

> [B]y filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power.

498 U.S. at 44, citing *Granfinanciera,* 492 U.S. 59-60.

"Once a party has triggered this process of allowance and disallowance of claims, that party has subjected itself to the bankruptcy court's equitable jurisdiction and thus can no longer demand a right to a trial by jury." *SNA Nut Co. v. Haagen-Dazs Co., Inc.*, 302 F.3d 725, 730 (7th Cir. 2002). S*ee also In re Capital Assocs. Int'l, Inc*., 2003 WL 26057510, at \*6 (Bankr. N.D. Tex. 2003) (creditor may lose its jury trial right if it asserts a claim that invokes the claims allowance process or the hierarchical ordering of creditor claims, or if the dispute is integral to restructuring the debtor-creditor relationship).

---

[2] Courts consider two theories when determining whether a party lost its right to a jury trial by filing a claim in a bankruptcy case. *See generally Control Ctr., L.L.C. v. Lauer*, 288 B.R. 269 (M.D. Fla. 2002). Under the "waiver" theory, "a defendant does not relinquish the Seventh amendment right to a jury trial by submitting a counterclaim in a bankruptcy proceeding, unless the submission clearly evidences a voluntary and intentional relinquishment of that right." *Id.* at 280. Alternatively, most courts interpreting *Langenkamp* and *Granfinanciera*, have favored a "conversion" theory: "when a counterclaim seeking monetary relief is entered in an adversary proceeding the claim is automatically converted from a legal dispute over money into an equitable dispute over a share of the estate." *Id.* at 282. Put another way, filing a claim converts a "private right" into a "public right." *Id.*, citing *Murray v. Richmond Steel and Welding Co. (In re Hudson)*, 170 B.R. 868, 875 (E.D.N.C. 1994) (filing a claim triggers the "non-jury, public rights 'process of allowing and disallowing claims in bankruptcy court'").

-6-

The loss includes any right to a jury trial of estate claims against the creditor, if resolution of those claims is required to determine the allowed amount of the creditor's claim. *Langenkamp v. Culp*, 498 U.S. at 44-45.

In general, courts conclude that a "claim" triggering the claim allowance process includes a counterclaim filed in an adversary proceeding. *See In re Mobile Int'l Co., Inc.*, 258 B.R. 466, 467 (Bankr. E.D. Okla. 2001) ("When a claimant asserts a counterclaim in an adversary proceeding, the claimant invokes the equitable jurisdiction of the Bankruptcy Court"); *In re Allied Companies, Inc.*, 137 BR 191, 924 (S.D. Ind. 1991) ("This court would not be alone in finding that a counterclaim is within the type of claims which eliminate the necessity for a jury trial under *Granfinanciera* and *Langenkamp*."), *quoted in In re Southern Textile Knitters*, 236 B.R. 207, 209-10 (Bankr. D. S.C. 1999); *In re M & L Bus. Mach. Co., Inc.*, 178 B.R. 270, 272 (Bankr. D. Colo. 1995) ("[A]s a number of recent cases have held, the filing of a counterclaim in an adversary proceeding will stand as a proof of claim against the bankruptcy estate, causing the defendant to lose his Seventh Amendment right to a jury trial."); *Control Center, L.L.C. v. Lauer*, 288 B.R. at 280.

In *Bayless v. Crabtree Through Adams*, 930 F.2d 32, 1991 WL 50166 (10th Cir. 1991), the Tenth Circuit held:

> The filing of the counter and cross-claims also undermines Crabtree children's argument for a jury trial. In *Langenkamp v. Culp*, the Supreme Court held that creditors who had submitted claims against the bankruptcy estate had waived any right to a jury trial on a subsequent preference action brought by the Trustee.

930 F.2d 32, at *2. The court affirmed the bankruptcy court's ruling that defendants lost their jury trial right when they filed a counterclaim seeking monetary relief from the estate. *Id.*

Thus, even a party who has not filed a proof of claim may waive its right to a jury trial if it files a counterclaim seeking monetary relief from the estate, thereby invoking the claims allowance

-7-

process. *See In re Hudson*, 170 B.R. 868, 875 (E.D.N.C. 1994); *In re Americana Expressways*, 161 B.R. 707, 712 n. 9 (D. Utah 1993).[3]

Medallion relies on a minority of cases holding that counterclaims do not waive jury trial rights if the claimant had not filed a proof of claim. *See Busch-Provo, Ltd. V. Sloan (In re Larsen)*, 172 B.R. 988, 993 (D. Utah 1993) (disagreeing with *Crabtree,*[4] court held that the filing of a counterclaim to determine ownership of funds held by the estate is not the equivalent of filing a proof of claim and does not invoke the claims allowance process); *NDEP Corp. v. Handl-It, Inc. (In re NDEP)*, 203 B.R. 905, 912-13 (D. Del. 1996) (counterclaim is not a claim invoking the claims allowance process if it does not seek distribution of *res* from the estate).

The Court concludes that the majority view is the better one, and should be followed. Medallion filed a counterclaim against Harpole seeking over $1 million in damages. Necessarily, Medallion's counterclaim invoked the claims allowance process. *See* 11 U.S.C. § 541(a)(7). Medallion's counterclaim is the kind of "claim" that subjects claimants to the equitable power of the bankruptcy court, i.e., it triggers the "public rights" process of allowing and disallowing claims.

*Stern v. Marshall,* 564 U.S. 462 (2011), does not change the result. *Stern* held that a bankruptcy court did not have authority to enter a final judgment on a debtor's state law counterclaim simply because the creditor filed a (largely) unrelated proof of claim. *Id.* at 502.[5] The *Stern* court noted that debtor's counterclaim did not invoke the claims allowance process, any

---

[3] On the other hand, a counterclaim that does not seek relief against the estate does not serve to waive a party's jury trial rights. *See Capital Associates Intern., Inc.*, 2003 WL 26057510, at *10 (N.D. Tex.) (counterclaim not seeking relief against the estate does not waive jury rights).

[4] The *Larsen* court disagreed with *Bayless v. Crabtree,* 108 B.R. 299 (W.D. Okla. 1989), affirmed, *Bayless v. Crabtree Through Adams*, 930 F.2d 32, 1991 WL 50166 (10th Cir. 1991).

[5] Although there was some overlap between the creditor's proof of claim and the debtor's counterclaim, ruling on the proof of claim would not have resolved the counterclaim.

-8-

public right, or involve the restructuring of the debtor-creditor relationship. 564 U.S. at 499. Rather, the counterclaim sought to augment the bankruptcy estate. *Id. See also In re Davis*, 538 Fed. App'x 440, 443 (5th Cir. 2013) (*Stern* holding applies to unrelated bankruptcy estate counterclaims against creditors filing proofs of claim); *In re Matrix Imaging Servs. Inc.*, 479 B.R. 182, 192 (Bankr. S.D. Ga. 2012) (to the same effect).

Moreover, *Stern* reaffirmed the *Granfinanciera/Langenkamp* analysis that bankruptcy courts have authority to enter final judgments on debtor claims against creditors when resolution of those claims is an integral part of ruling on a creditor's proof of claim. *Stern*, 564 U.S. at 499 ("Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process"). *See also U.S. Bank Nat. Ass'n v. Verizon Communications, Inc.*, 761 F.3d 409, 424-425 (5th Cir. 2014) (*Langenkamp* and *Granfinanciera* are still good law post-*Stern*; creditor did not have jury trial right where resolution of the estate's fraudulent transfer claim was integral to allowance of creditor's proof of claim). *See generally Mason v. Ivey*, 498 B.R. 540, 549 (M.D.N.C. 2013) (nothing in *Stern* changes the jury trial analysis of *Granfinanciera* and *Langenkamp*).

    C.    <u>Effect of a Compulsory Counterclaim</u>.

Medallion's asserted counterclaim against Harpole likely is compulsory, as it involves the same transactions and facts at issue in Harpole's complaint, all of which occurred post-petition. *See* Bankruptcy Rule 7013 and Rule 13(a)(1). The compulsory nature of the counterclaim does not negate the jury trial loss, however. As the court stated in *In re Warmus*, 276 B.R. 688 (S.D. Fla. 2002):

> [D]espite th[e] conclusion that the counterclaim is compulsory, the claim nonetheless seeks damages from the bankruptcy estate. Therefore, the counterclaim

> is akin to the filing of a claim, and does act as a waiver as to the right to a jury trial. [citations omitted]. The fact that Leshin is forced to make his counterclaim in this proceeding is irrelevant to the Supreme Court's decisions that seeking money from the bankruptcy estate acts as a waiver of the right to a jury trial under the bankruptcy scheme set up by Congress.

276 B.R. at 693.

This view is widely held. *See, e.g., Peachtree Lane Associates, Ltd. v. Granader*, 175 B.R. 232, 237 (N.D. Ill. 1994) (fact that counterclaim is compulsory is not determinative of defendant's right to a jury trial); *In re Schwinn Bicycle Co.,* 184 B.R. 945, 952-54 (Bankr. N.D. Ill. 1995) (citing *Peachtree*); *In re Hudson*, 170 B.R. 868, 875 (E.D.N.C. 1994) (waiver of jury trial right occurred whether counterclaim was permissive or compulsory); *In re Price*, 346 B.R. 857, 862 (Bankr. M.D. Ala. 2006) (same); *In re Southern Textile Knitters, Inc.*, 236 B.R. 207, 211 (Bankr. D.S.C. 1999).

The Court concludes that there is no reason to treat compulsory counterclaims differently than permissive counterclaims. First, if the issue is approached using the "conversion" theory discussed above, whether the counterclaim is compulsory or permissive makes no difference—if the claimant asserts a right to a portion (in this case a very large portion) of the bankruptcy estate, the matter is converted into an equitable proceeding, involving public rights. *See Control Center v. Lauer,* 288 B.R. at 282; *In re Hudson*, 170 B.R. at 875.

Second, a compulsory counterclaim is no more compulsory that a proof of claim bar date. In either case, any right to payment from the bankruptcy estate is lost if the claim is not timely filed. Just as a claimant submits to the equitable jurisdiction of the Court by filing a proof of claim, so does a defendant by filing a counterclaim that seeks a portion of the estate. It is no less "fair" to divest a compulsory counterclaimant of its jury trial right than the holder of a filed proof of claim. That is the bankruptcy system. *See Warmus*, 276 B.R. at 693 ("The fact that [defendant]

is forced to make his counterclaim in this proceeding is irrelevant to the Supreme Court's decisions that seeking money from the bankruptcy estate acts as a waiver of the right to a jury trial under the bankruptcy scheme set up by Congress. That the Supreme Court's interpretation of this scheme seems unfair to [defendant] is beyond this Court's authority to remedy").

   D.   Effect of Post-Petition Claim.

The rule that a counterclaim against the bankruptcy divests the claimant of its jury trial right applies whether the counterclaim is based on pre- or post-petition conduct. In *O'Neill v. New England Road, Inc.,* 2000 WL 435507 (D. Conn. 2000), for example, the court rejected the argument that administrative expense counterclaims should be treated differently than pre-petition claims:

> [A]n administrative expense claim qualifies as an equitable claim to a pro rata share of the bankruptcy res, the assertion of which extinguishes otherwise available seventh amendment rights to a jury trial.
> Regardless of whether the counterclaims are pre- or post-petition, they are still claims against the debtor's estate and hence seek a piece of the res under the equitable jurisdiction of the bankruptcy court. The court can find no legal significance in the fact that the piece of the pie that NE Road seeks to carve out of the estate stems from post-petition conduct by the debtor. Resolution of post-petition claims are as much a function of the bankruptcy court's equitable apportionment of the estate as resolution of pre-petition claims.

2000 WL 435507, at *6.

Similarly, in *Snider v. Comm. Fin. Servs., Inc. (In re Comm. Fin. Servs., Inc.),* 252 B.R. 516 (Bankr. E.D. Okla. 2000), the court brushed aside the argument that an adversary proceeding seeking damages for alleged post-petition WARN Act violations did not assert "claims" against the bankruptcy estate:

> Plaintiffs argue that they have not asserted a "claim" against the estate; they insist that a complaint seeking recovery for alleged wrongs that accrued postpetition is not a "claim" under the Bankruptcy Code, but rather is a request for payment of an administrative expense . . . . Plaintiffs' WARN Act claims against CFS, regardless

-11-

> of the procedural vehicle with which they are asserted, fall unambiguously within the Bankruptcy Code's definition of "claim," however.
>
> . . . .
>
> Plaintiffs have asserted a "right to payment" from the estate and thus a "claim" against the estate. "The broad definition of claim . . . . includes of necessity post-petition obligations incurred by the trustee or debtor in possession." *In re MacDonald,* 128 B.R. 161, 164 (Bankr.W.D.Tex.1991). Regardless of the semantics involved, Plaintiffs have indeed asserted claims for distribution from the estate.

252 B.R. at 525. *See also In re Winimo Realty Corp.,* 270 B.R. 108, 122 (S.D.N.Y. 2001) (citing and following *O'Neill*); *Roberds, Inc. v. Palliser Furniture*, 291 B.R. 102, 107 (S.D. Ohio 2003) (citing and following *O'Neill* and *Winimo Realty*). *See generally In re Warmus*, 276 B.R. at 693 (defendant lost right to jury trial by filing a counterclaim, which was directed at the bankruptcy trustee and based on post-petition conduct); *Segal v. California Energy Development Corp.*, 167 B.R. 667, 672 (D. Utah 1994) (filing of counterclaim relating to post-petition contract with the bankruptcy trustee waived jury trial rights).

There is no reason to treat post-petition claims differently than pre-petition claims. Both assert a right to bankruptcy estate assets, and both are subject to bankruptcy court approval. Apportioning estate assets is inherently an equitable, "public rights" procedure, to which no jury trial right attaches. Further, since allowed administrative expense claims must be paid in full, in cash, as a condition to confirming a plan of reorganization, 11 U.S.C. § 1129(a)(9), it is fair to treat them no better for this purpose than proofs of claim.

It makes no difference that Medallion's counterclaim did not specifically mention administrative expense allowance. As the court said in *O'Neill*, post-petition liabilities generally are administrative expenses. 2000 WL 435507, at *7. *See also Warmus*, 276 B.R. at 693 (treating counterclaim against estate based on trustee's alleged post-petition conduct as "akin" to filing a claim). There is no specified procedure for seeking allowance of an administrative expense claim,

only that an entity "file a request for payment . . . ." § 503(a). The Court holds that the only reasonable way to view Medallion's counterclaim is as a § 503(a) request for allowance of an administrative expense. *See also In re Dennis Ponte, Inc.*, 61 B.R. 296, 298 (9th Cir. BAP 1986) (counterclaim for alleged post-petition tort was a potential administrative claim).[6]

E. <u>Timeliness of the Objection</u>.

Medallion argues that Harpole's objection to Medallion's jury demand was untimely, and therefore should be overruled on estoppel grounds. The Court disagrees.

Neither FRCP 38 nor FRCP 39 establishes a deadline to object to a jury demand. Moreover, FRCP 12(f), which sets a 21-day deadline to file certain motions to strike, does not apply to jury demands. *See In re HA-LO Industries*, 326 B.R. 116 (Bankr. N.D. Ill. 2005) (by plain language, FRCP 12(f) does not apply to jury demands); *E.E.O.C. v. Thomas J. Lipton, Inc.*, 571 F. Supp. 535 (D.N.J. 1982).

The Court concludes there was no prejudicial delay. Medallion filed its jury demand with its answer and counterclaim on December 5, 2016. Harpole answered the counterclaim on December 14, 2016, without objecting to the jury demand. A week later, Harpole filed its

---

[6] Although Medallion seeks about $1.2 million from the Debtor, at oral argument Medallion asserted that it is too soon to know whether it would ask for payment from the bankruptcy estate. This argument fails. First, by suing Harpole (a debtor in possession), Medallion necessarily seeks compensation from the estate. *See* 11 U.S.C. 101(5)(A): ("The term "claim" means – right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated…"); *In re Commercial Fin. Servs., Inc.*, 252 B.R. 516, 525 (Bankr. N.D. Okla. 2000) ("The broad definition of claim in Section 101(4) [now 101(5)] includes of necessity post-petition obligations incurred by the trustee or debtor in possession.") (quoting *In re MacDonald*, 128 B.R. 161, 164 (Bankr. W.D. Tex. 1991)). Second, allowing claimants to litigate their claims in jury trials and then file administrative expense applications based on the jury verdict would substantially disrupt the reorganization process.

objection. Two weeks between the filing of a jury demand and the filing of an objection thereto is prompt. *See, e.g.*, FRCP 12(f) (gives parties three weeks to file specified motions to strike).

### III. Conclusion

Outside of bankruptcy, Medallion had a right to a jury trial of Harpole's claims against it, and to its claims against Harpole. In the context of this case, however, Medallion lost that right when it filed its counterclaim against the debtor in possession. Harpole's objection to the jury demand was timely, and is well taken. The Court will enter a separate order striking Medallion's jury demand.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 10, 2017

Copies to:

William Davis
Nephi Hardman
6709 Academy NE, Ste. A
Albuquerque, NM 87109

Richard Staff
Jeff Weems
6363 Woodway, Suite 1100
Houston, TX 77057

William Steven Bryant
600 Congress Avenue, Ste. 2200
Austin, TX 78701